UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| VERSUS | NUMBER: 16-110 |
| FREDY ANTONIO MURILLO-AGUILAR | SECTION: MAG |

## ORDER AND REASONS

Before the Court is the Defendant's, Fredy Antonio Murillo-Aguilar's ("Murillo's"), motion to withdraw guilty plea and/or motion to vacate and set aside conviction and sentence. (Rec. doc. 5). The Government filed an opposition to the motion (rec. doc. 6) and the Court held a hearing on the motion on December 2, 2016. (Rec. doc. 8).[1]

### I. BACKGROUND FACTS

#### A. *Murillo's Immigration Status*

The Government alleges – and Murillo by all accounts agrees – that he is a native and citizen of Honduras, who also is or has been known as Antonio Lopez Rodriguez.[2] The record indicates that he entered the United States on or about May 1, 2003 at or near San Ysidro, California. (Rec. doc. 6-1). Because he was not "admitted or paroled after inspection by an Immigration Officer," when he entered the country he did so without a visa or other lawful immigration status. *Id.*

The Government alleges that on May 18, 2003, federal immigration agents encountered Murillo at a bus station in Louisiana and that he was thereafter served in person

---

[1] Murillo, through counsel, waived his presence at the hearing. Counsel advised that he is currently the subject of deportation proceedings.
[2] At no point in these proceedings has Murillo disputed any of the government's factual contentions regarding either his immigration status or the events that led to his being arrested and brought before this Court.

with a Notice to Appear ("NTA"), which explained that the Government alleged that he was subject to removal. (Rec. doc. 6 at p. 2). Murillo was not detained pending his court date on that NTA.

On August 29, 2006, a removal hearing was scheduled for Murillo "pursuant to proper notice." (Rec. doc. 6-2). Murillo did not appear for that hearing and federal Immigration Judge Wayne Stogner issued an order that he be removed from the U.S. to Honduras. *Id.* That removal order remained in effect through the date of the hearing on the current motion.

B. *Events Leading to the Present Charges*

On August 21, 2016 United States Fish & Wildlife Service ("FWS") Officer Zachary Kincaid ("Kincaid") observed a vehicle on the property of Bayou Sauvage National Wildlife Refuge after the refuge was closed. (Rec. doc. 1, pp. 2-5). Kincaid approached the vehicle and observed Murillo in the driver's seat. (*Id.*). With the vehicle running and the keys in the ignition, Kincaid observed: (1) an open bottle of Bud Light beer sitting in the cup holder closest to the driver's seat and (2) a plastic bag with torn edges sticking out of the crevice next to the driver's seat. (*Id.*). Murillo spoke briefly to Officer Kincaid and, unprompted, showed Officer Kincaid that his beer bottle was partially full. (*Id.*). Kincaid also believed the torn edges of plastic were part of a bag containing drugs. (*Id.*).

Based on his observation that Murillo was slurring his words and his eyes were glassy, Kincaid believed that Murillo was under the influence of alcohol or a controlled substance, and ordered him out of his vehicle. (*Id.*). Murillo exited the vehicle but fled on foot into the nearby marsh. (*Id.*). Officers with the federal FWS, the Louisiana Department of Wildlife and Fisheries, and the New Orleans Police Department searched for Murillo for approximately four hours, but were unable to locate him. (*Id.*). Kincaid eventually returned

2

to Murillo's vehicle to have a tow truck company remove the vehicle from the refuge. (*Id.*). While standing next to the open window of the vehicle, Kincaid observed in plain view a soda can apparently fashioned into a pipe with a white crystal substance burned onto the bowl of the pipe. (*Id.*). Kincaid concluded that this white substance was crack cocaine. (*Id.*). Kincaid retrieved the can and the plastic bag that he had observed earlier, which also contained pieces of white crystal that appeared to him to be crack cocaine. (*Id.*).[3] He also retrieved some papers containing residential addresses. (*Id.*).

When FWS officers attempted to contact Murillo at a residence the next day, he fled again by jumping over a fence in the backyard. (*Id.*). Family members at the residence informed FWS officers that Murillo had come to the house in the middle of the night, covered in mud and soaking wet. (*Id.*). They further stated that Murillo was a Honduran national. (*Id.*). FWS officers thereafter contacted Immigration and Customs Enforcement ("ICE") agents, who had information suggesting that Murillo did not have legal immigration status in the U.S. (*Id.*).

On September 29, 2016, United States Magistrate Judge Wilkinson signed a federal arrest warrant and complaint charging Murillo with trespassing, possession of crack cocaine, and transporting an open container of alcohol, in violation of 16 U.S.C. §668dd(c) and (f)(2) and 50 C.F.R. §§26.21, 27.82(b)(2), 27.31(a), respectively. (*Id.*). Each of these offenses is a "petty offense." *See* Federal Rule of Criminal Procedure 58. On October 21, 2016, Murillo was arrested pursuant to the warrant. He appeared before this Court that same day, along

---

[3] Kincaid subsequently conducted a field test on the suspected crack cocaine, which resulted in a positive test for cocaine. (*Id.*). He weighed the substance and determined that it was approximately 0.6 grams. (*Id.*).

with a number of other defendants who had been arrested and brought before the Court that day after failing to appear for prior court appearances.

All of the defendants appearing on the docket that day, including Murillo, were charged with one or more "petty offense[s] for which no term of imprisonment [would] be imposed," as that term is defined in Rule 58. Accordingly, the Court advised every defendant on the docket, including Murillo, of two important facts applicable to each of their cases: (1) no term of imprisonment would be imposed as to any defendant then before the Court and (2) while each defendant had the right to *retain* counsel in their case, none were entitled to court-appointed counsel and each would have to choose whether to proceed that day with or without retained counsel.

The Assistant United States Attorney assigned to the case spoke with Murillo and thereafter represented to the Court on the oral record that the she had explained to him that, if Murillo pled guilty to possession of a controlled substance, the Government would move to dismiss the other charges against him. With the assistance of a court-appointed, certified and sworn translator, Murillo pleaded guilty *pro se* to possession of a controlled substance, and, after conducting a plea colloquy with him, this Court imposed a fine of $500. (Rec. doc. 3). The Government thereafter moved to dismiss the other charges against Murillo and that motion was granted. (*Id.*). No term of imprisonment was requested or imposed, and this Court released Murillo after his court appearance. (*Id.*).

At the aforementioned hearing, neither the assigned Assistant United States Attorney nor the Court advised Murillo of potential immigration consequences associated with his plea, and immigration consequences were not part of his plea colloquy.

The Government informed the Court in connection with the current motion that on October 27, 2016, six days after pleading guilty, ICE agents arrested Murillo pursuant to his outstanding removal order from August 2006. At the time of the hearing, Murillo was in civil immigration custody and did not have any pending immigration-court proceedings.

On November 16, 2016, Murillo, through counsel retained after his guilty plea, filed his motion to withdraw that guilty plea and/or to set aside his conviction. In his brief in support of the motion, Murillo relies heavily on the United States Supreme Court decision in *Padilla v. Kentucky*,[4] basing his request to set aside his guilty plea on the related arguments that his "guilty plea was unconstitutionally infirm" because: (1) it was accepted without counsel and (2) Murillo was not informed of the potential immigration consequences of that plea. (*See* rec. doc. 5 at p. 2). At the hearing on the motion, Murillo's counsel, apparently seizing upon certain language found in the *Padilla* decision, expanded somewhat on the arguments detailed in brief, arguing that Murillo's guilty plea resulted in a change of immigration status such that his deportation became "virtually mandatory."[5] Specifically, counsel argued that the guilty plea to a petty offense somehow caused Murillo to forfeit a right to appeal the outstanding removal order that he would have had absent that plea.

The Court has considered the briefs and argument of Murillo and the Government and, for the reasons set forth below, finds that Murillo is not entitled to withdraw his guilty plea and his motion will be denied.

---

[4] 559 U.S. 356 (2010).
[5] *Id.* at 359.

## II.     ANALYSIS

### A.  *Murillo Was Not Entitled to Court-appointed Counsel and His Waiver of Retained Counsel Was Effective*

Murillo was charged with three offenses, all of which were petty offenses. Fed. R. Crim. P. 58. Accordingly, he was not entitled to court-appointed counsel unless a term of imprisonment was actually imposed, which it was not. *See, e.g.*, *Alabama v. Shelton*, 535 U.S. 654 (2002) (standard for appointment counsel is actual imprisonment, which includes imposition of suspended sentence); *Scott v. Illinois*, 440 U.S. 367, 373-74 (1979) (finding that "adoption of actual imprisonment as the line defining the constitutional right to appointment of counsel" is "eminently sound"); *United States v. Perez-Macias*, 335 F. 3d 421 (5th Cir.), *cert. denied*, 540 U.S. 994 (2003)(prior uncounseled misdemeanor conviction was proper because no imprisonment was imposed). In fact, not only was no term of imprisonment imposed, Murillo was specifically advised by the Court at the outset of the hearing that any penalty imposed as a result of a guilty plea or verdict would take the form of a fine. Accordingly, he was not entitled to court-appointed counsel.

Murillo's counsel suggested at the hearing that, perhaps, the Court's admonition to Murillo, made through an interpreter, that he was entitled to retain his own lawyer was somehow lacking or that, perhaps, the Court should not have taken Murillo at his word when he stated to both the Government's lawyer and to the Court that that he understood his rights and wished to proceed without counsel. Specifically, counsel argues that

> [A] court, when called upon to do so through a recognized procedural vehicle, has the power, notwithstanding a record waiver of constitutional rights, to determine whether other factors present at the time of a guilty plea, whether inside or outside the plea colloquy record, were sufficient to render the plea involuntary or unintelligent. *See Blackledge v. Allison*, 431 U.S. 63, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977).

6

(Rec. doc. 5 at p. 2).

While the Court agrees it possesses the power described above, there is no evidence of "other factors" that would make additional inquiry appropriate or necessary in this case. Accordingly, the Court rejects the suggestion that Murillo was somehow entitled to counsel or to further examination regarding his waiver of counsel as a constitutional prerequisite to entering his guilty plea to a petty offense.

> B. *There Is No Evidence There Were Any Immigration Consequences Associated with Murillo's Guilty Plea*

Murillo's motion is premised upon the idea that he has experienced or suffered "immigration consequences," namely deportation, as a result of his guilty plea. It is this factual premise that, he says, implicates the *Padilla* decision. However, the *Padilla* decision is in no way instructive or controlling on the facts of this case, because: (1) there is no evidence that Murillo's immigration status changed as a result of his plea, (2) there is no evidence that his guilty plea to a petty offense makes his deportation "virtually mandatory" and (3) the record evidence establishes that Murillo was already deportable at the time of his plea and is actually being deported as a direct result of a 10-year-old outstanding removal order, not because of his guilty plea.

The material differences between the *Padilla* case and this one are numerous. Unlike this matter, Padilla was an ineffective-assistance-of-counsel case decided under the two-pronged inquiry announced in *Strickland v. Washington*.[6] That inquiry is not appropriate here, as Murillo was not entitled to appointed counsel and waived his right to retain counsel.

---

[6] 466 U.S. 668 (1984). The *Strickland* inquiry considers: (1) whether counsel's advice "fell below an objective standard of reasonableness" and (2) whether there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *Id.* at 688, 694.

7

Substantively, at the time of his guilty plea that was subject of the decision in his case, Padilla was a lawful permanent resident of the United States and had been for over 40 years. *Padilla*, 559 U.S. at 359.  On the other hand, by his own admission, "Murillo is not a United States citizen"[7] and there is no indication in the record that he has ever been legally present in the United States.  The result in *Padilla* derived from the fact that the defendant's guilty plea to *felony* drug distribution charges effected a change in immigration status rendering his removal from the country "virtually mandatory" and that his counsel at the time failed to advise him of those consequences.  *Padilla*, 559 U.S. at 359.  Murillo, by contrast, experienced no change in status as a result of his guilty plea to a petty offense, because he was illegally present in the country and already subject to removal pursuant to the 2006 removal order.  More importantly – in fact dispositive to his argument – is that he was subject to removal by order of the immigration court at the time he was charged and arrested and that there is no evidence whatsoever that his guilty plea had any effect on that status.

There are other cases far more persuasive here than *Padilla*.  For instance, *United States v. Batamula*, also an ineffective-assistance-of counsel case, involved a defendant who committed two felonies after failing to leave the country subsequent to the expiration of his student visa.  823 F.3d 242 (5th Cir. 2016).  In pleading guilty to two felonies, Batamula was advised by the Court – but not his attorney – that he would "likely be deported" if he pleaded guilty, which he chose to do anyway.  The Fifth Circuit determined that he had failed to satisfy the prejudice prong of the *Strickland* analysis because by virtue of overstaying his visa, an independent ground for deportation, Batamula's deportability "was a *fait accompli* before he pleaded guilty" and that "proceeding to trial on the one-count indictment would not change

---

[7] (Rec. doc. 5 at p. 3).

his deportation status." *Id.* at 242.  This reasoning is on all fours with the facts of this case.[8]  Indeed, the Court notes that not only does the record indicate that Murillo is being deported pursuant to the 2006 removal order, his counsel candidly admitted as much at the hearing and there is no evidence whatsoever that proceeding to trial on the three petty offenses he was charged with would change his deportation status.

Under the circumstances and on the present record, the Court finds there were no immigration consequences associated with Murillo's plea and, accordingly, it was not required that he be advised that there would be.

Finally, the Court addresses the related argument made by counsel for the first time at the hearing that, by virtue of his guilty plea, Murillo forfeited some inchoate right to challenge his 10-year-old removal order.  At the hearing, the Court rejected that argument (and does so here) because:  (1) there is no authority cited here that Murillo possessed such a right in the first instance and (2) even if such a right existed, there is no authority cited for the proposition that a guilty plea to a petty offense acts to eliminate or forfeit that right.  For these reasons, the Court cannot find that this argument has merit.

---

[8] The Court is also persuaded by the result in *Cadet v. United States*, No. 11-CR-113, 2013 WL 504821 (N.D. Ga. Feb. 8, 2013).  In that case, an immigration judge ordered Cadet's removal from the United States prior to his guilty plea based on the fact that he did not appear at a hearing. In other words, Cadet had already been ordered deported at the time of his guilty plea, and the court concluded that he could not establish that any failure on the part of Cadet's counsel to advise him regarding the immigration consequences of his plea caused him prejudice. *Id.* at *1.

Accordingly, for the reasons set forth above, Murillo's motion to withdraw guilty plea and/or motion to vacate and set aside conviction and sentence is denied.

New Orleans, Louisiana, this __8th__ day of _____December_____, 2016.

_____
MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE